## LLEWELLYN v. COMMERCIAL CASUALTY INS. CO.

### No. 7330.

Circuit Court of Appeals, Seventh Circuit.

Feb. 21, 1941.

145

George J. Dreiske and William L. Bourland, both of Chicago, Ill., for appellant.

Leslie H. Vogel and Cassels, Potter & Bentley, all of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

On December 10, 1929, the defendant-appellee (hereinafter referred to as the defendant) issued its personal accident policy of insurance to one Fred Carl Klein. Among other provisions of the policy it was provided that, in consideration of the premium paid by the insured, the defendant insured Fred Carl Klein for a period of six months from December 10, 1929, against loss resulting directly and independently of all other causes from accidental bodily injury, fatal or nonfatal.

Among the special indemnities contained in the policy was a provision that "If a loss is caused directly and exclusively by * * assault by burglars or highwaymen * * the same shall be covered hereunder." The insurance provided in the policy did not cover "loss from injuries * * * which shall result directly or indirectly * * * from disease in any form * * *." It is further provided that "if within One Hundred and eighty (180) days from the date of accident, irrespective of intervening total disability, such injury shall directly result in one of the following losses, the company will pay the sum set opposite such loss; * * * loss of life the principal sum." Provision was also made in the policy for written notice of injury on which a claim may be based within twenty days after the date of the accident causing the injury and in the event of accidental death immediate notice was required. It was further provided, however, that "Failure to give notice within the time provided in this policy, shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible." Upon proper receipt of notice, there was to be furnished by the company forms as were usually furnished by it for the filing of proof of loss. "Affirmative proof of loss must be furnished to the company at its said office in case of claim for loss of time * * * and in case of claim for any other loss, within 90 days after the date of such loss." The principal sum to be paid under the terms of the policy, in the event of accidental death, was $10,000, which sum the plaintiff-appellant (hereinafter referred to

as the plaintiff), as beneficiary, is seeking to recover in this action.

The case was tried to the court without a jury, and at the conclusion of the evidence introduced on behalf of the plaintiff, and without any evidence being introduced on behalf of the defendant, the District Court filed its special findings of fact, stated its conclusions of law thereon, and directed the entry of judgment for the defendant. The District Court found as a fact that the proximate cause of the death of Fred Carl Klein was a disease of the heart which was not caused or contributed to by the holdup or any event or incident in connection therewith; that no proofs of loss were at any time submitted to the defendant or any representative or agent of the defendant by the plaintiff or any one acting in her behalf pertaining to the death of the insured, and that there was no waiver on behalf of the defendant of any provisions of the policy. Upon these findings of fact the court concluded as a matter of law that the plaintiff was not entitled to recover, and judgment was rendered accordingly. From that judgment the plaintiff is prosecuting this appeal.

The question presented for our determination is whether or not there is substantial evidence to support the findings and judgment of the District Court.

The insured, Fred Carl Klein, was unmarried, 44 years of age, and lived with the plaintiff, who was his sister, and was so living with her at the time of his death. He was a bookkeeper and manager of the office for the Edgewater Laundry which was located about two miles from the home of plaintiff, and he had been so employed by that concern for approximately eight years. On the evening of January 31, 1930, he and his sister were at home when two men armed with revolvers called at the home. Upon answering the door bell, the insured was confronted by the two men, who, at the point of guns, forced him and his sister to enter their automobile and ride with them to the laundry, where they were met by two confederates. The insured was forced by the four men to open the safe at the laundry, take out the money, and give it to them. Insured and his sister were then placed in a room with other employees of the laundry, and they were all warned by the holdup men not to identify them or it would be "too bad" for them. Shortly thereafter, the insured received several anonymous letters and tele-

phone calls of a threatening nature, and he later went to the police station and identified the holdup men, and again was threatened for so doing.

Prior to the occurrence of January 31, the insured was apparently in good health, of moderate habits, and rather athletically inclined. He gave evidence of extreme nervousness at the time of the holdup, his lips becoming blue, and his face pale. He continued in a nervous condition from that time until his death, which occurred on March 3 following. However, he continued to perform his regular duties at the laundry following the holdup until his death, working full time each day. After the holdup, he transferred his activities to an office upstairs, and walked up and down stairs several times each day in the performance of his duties without any apparent ill effect. He was a trusted employee and performed his duties efficiently at all times, both before and after the holdup. No effort was made by him to consult a physician following the holdup until the day of his death, on which day he did little work at the office, and, about 1 o'clock P. M. was experiencing some difficulty in breathing and called to see a doctor, but the doctor was not in his office, and he returned to the laundry. He left the laundry early that day, going to his home between 5 and 5:30 o'clock P. M., where he continued to suffer from a shortness of breath. He went to bed after reaching home, stayed there a short time, and then got up and went to the bath room, where he fell dead.

On the following day an autopsy was performed by Samuel A. Levinson, a physician and surgeon of twenty years' experience, which disclosed a coronary thrombosis in the left anterior coronary artery and sclerosis of the coronary arteries. Dr. Levinson was a graduate of the University of Illinois College of Medicine, and was connected with the Department of Pathology and the Research Hospital of that university. He stated that, from his examination of the insured, the cause of his death was coronary thrombosis; that the insured had sclerosis of the coronary vessels which might have been a contributing cause of his death; that "the clot in the heart was apparently of a rather recent origin"; that it may have occurred within a few days or very shortly before his death. He further stated that thrombosis is not always, or necessarily, fatal; that

he was unable to tell with any degree of certainty that the thing which occurred on January 31 was not caused by indigestion, and that he had never heard of a person continuing to work for a period of thirty days with a clot in the coronary artery without medical attention and rest, and that it would be unusual for one so to do. Furthermore, he testified that he had found no scar tissue in the heart when he performed the autopsy that would evidence the occurring of a thrombosis on January 31.

Two physicians testified as experts, and, in answer to a hypothetical question, stated that, in their opinion, the insured may have suffered a coronary thrombosis at the time of the holdup which did not result in his death. Each gave as his opinion that the insured's death was caused by a second thrombosis which occurred on the day of his death.

Even though there may have been a coronary thrombosis at the time of the holdup, as expressed in the opinion of the two experts, such thrombosis did not result in the death of the insured. It was the thrombosis which occurred on March 3 that caused his death. He was, at that time, suffering from sclerosis of the coronary vessels, as stated by Dr. Levinson, and this sclerosis caused a roughening of the interior walls of the vessels to such an extent that the flow of the blood was obstructed and readily caused a thrombosis resulting in his death. The only evidence that the insured may have had a thrombosis on January 31 is that given by the two experts, and their opinion is expressed in answer to a hypothetical question. It would seem reasonable to conclude that he had been suffering from sclerosis of the arteries for some time prior to his death and that this condition of the arteries facilitated the occurrence of the thrombosis, for a thrombosis will not occur in a well and normal artery. It is apparent that the proximate cause of the insured's death was a coronary thrombosis which occurred on March 3.

It is the contention of the defendant that no notice or proof of loss was furnished by the plaintiff or by any one on her behalf, as required by the terms of the policy. Plaintiff, on the other hand, contends that such notice and proof was waived by the defendant. The only evidence relating to the question of notice of death was a letter written on April 21, 1930, by plaintiff's attorney, addressed to the defendant and sent by messenger, as follows: "Please deliver to bearer your forms of proof of death, re Fred Carl Klein, Policy No. 242837"; a second letter from the same attorney, on the following day, in which it was stated, in substance, that he was informed that forms had been refused the bearer of the first letter, and that he hoped that that letter would receive the attention of the person in authority at the defendant's office; and a letter from the defendant, on April 29, 1930, in reply, in which it disclaimed that any notice of death had ever been furnished it, this being the reason the forms of proof of loss were not given the bearer. It was further stated by the defendant in its letter that if it was advised whom the writer of the two letters which it had received represented, and as to when the death occurred, it would be glad to give the same consideration. No further efforts were made on behalf of the plaintiff to notify defendant, and this action followed. There is some evidence as to the activities of one William Bessey, an insurance broker, upon which the plaintiff relies as a waiver of notice or proof of death. It is sufficient answer to this contention, however, to observe that Bessey was neither an agent nor a representative of the defendant and, therefore, anything said or done by him would in no manner bind the defendant, or have any effect upon the provisions of the policy requiring notice and proof of loss. Under the evidence, the plaintiff did not comply with the provisions of the policy relating to notice and proof of loss, and the defendant did not waive such provision. No notice or proof of loss was ever furnished the defendant.

In the case of Feder v. Midland Casualty Company, 316 Ill. 552, 147 N.E. 468, 471, the court said: "The making of proofs was a condition precedent to any liability on the policy * * *. Without such proof there could be no recovery, and the court could do nothing but instruct the jury, at the request of the defendant, to find the issues in its favor." The provisions with reference to notice and proof of loss in the policy in suit in the case of Feder v. Midland Casualty Company, supra, and those contained in the policy in the instant case, are identical, and are in accordance with the requirements of the Acts of June 29, 1915, Laws of 1915, p.

472, Sec. 2, Smith-Hurd Stats. c. 73, § 363. See Bergholm v. Peoria Life Insurance Company, 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416.

The District Court properly found the facts specially and stated its conclusions of law thereon as required by Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for the District Courts of the United States.

The motion of defendant to dismiss the appeal is overruled, and the judgment of the district court is affirmed.